458 F.Supp. 992 (1978)
Patricia M. REILLY, on behalf of herself and all persons similarly situated, Plaintiff,
v.
BOARD OF EDUCATION, COMMON SCHOOL DISTRICT 14, NEW BERLIN, WISCONSIN and Virgil M. Staples, Superintendent of Public Schools, New Berlin, Wisconsin, Defendants.
No. 75-C-311.
United States District Court, E. D. Wisconsin.
August 25, 1978.
*993 *994 Philip L. Atinsky, Atinsky, Kahn & Sicula, Milwaukee, Wis., for plaintiff.
Fred G. Groiss and Patrick W. Schmidt, Quarles & Brady, Milwaukee, Wis., for defendants.

MEMORANDUM AND ORDER
WARREN, District Judge.
This is a civil action arising under 42 U.S.C. § 1983 and the Civil Rights Act of 1964 as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq.
In her complaint, plaintiff, Patricia Reilly, alleges that she was denied the position of District Music Coordinator for Common School District 14, New Berlin, Wisconsin, solely on the basis of sex. The defendant Board of Education, Common School District 14, New Berlin, Wis. (the Board) is a quasi-municipal corporation charged with running the schools in the City of New Berlin, Wisconsin. Defendant, Virgil M. Staples, is the superintendent of the New Berlin public schools.
A court trial was held before this Court on December 5 through December 8, 1977.
A brief review of the facts shows that, during the 1971-72 school year, the district music coordinator of the New Berlin public schools resigned his position. The job of district music coordinator is a part-time position which is handled on a co-curricular contract basis. The job entails work over and above that performed in a person's regular teaching duties. The person holding the job is directly responsible to the deputy superintendent of schools. During the 1972-73 school year, this job paid $675.00.
By letter of March 3, 1972, the plaintiff applied for this position but was informed by Lawrence Olson, Deputy Superintendent of Schools, that there was no plan to fill the *995 position for the balance of the school year. He informed the plaintiff that if something should develop, he would contact her.
On May 17, 1972, a job announcement for the district supervisor of music position was circulated throughout the New Berlin school system. A statement headed "Qualifications" and a separate fourteen-point job description giving the general duties and responsibilities of the supervisor of music position was appended to the job announcement. The qualifications for the job were listed as follows:
The district school music coordinator must be a fully certified teacher of public school music. (Plaintiff's Exhibit 4)
The general duties and responsibilities of the supervisor of music were given as follows:
1. The primary function of the district music coordinator is the promotion, constant development and improvement of the school music program.
2. He is to supervise the music staff members in the development of a philosophy and sequential curriculum on a K-12 basis and for recommendation of texts and materials necessary to implement the curriculum.
3. He is to submit the proposed curriculum and recommendations to the Deputy Superintendent.
4. He is to submit recommendations for improvements of the music program to the Deputy Superintendent of Schools for action.
5. Prepare and maintain inventory of instruments, uniforms, music and other music equipment and supplies for each school.
6. Review the inventory prepared by each school and provide copies for distribution to personnel concerned.
7. Act on any repair bills on instruments and equipment and in turn submit them for payment.
8. Act on all requisitions for supplies and equipment.
9. Prepare a budget annually in cooperation with the staff members and submit for review.
10. Meet with members of the department from all the district schools and coordinate the calendar for musical events.
11. Coordinate the arrangements for special musical events or activities for the various musical organizations in the district.
12. Plan and arrange the necessary summer school music programs.
13. Plan and arrange attendance of staff members at music conferences.
14. Meet with the Deputy Superintendent at least once each month to discuss items of mutual concern. (Plaintiff's Exhibit 4)
At the trial, plaintiff testified that she had experience in all but one of the areas listed as general duties and responsibilities of the coordinator of music. The only one she did not have experience in was point 14, meeting with the deputy superintendent at least once a month to discuss items of mutual concern. Plaintiff had extensive teaching experience and held a doctorate degree in music and higher education administration.
By letter of May 19, 1972, to Virgil Staples, Superintendent of Schools for New Berlin, plaintiff applied for this position. The deputy superintendent interviewed the plaintiff and the other job applicants in early June, 1972, and made his recommendations in a letter to the superintendent. This letter stated:
I have had a discussion with each of the four following applicants and would recommend them in the following order:
1. Mr. White
2. Mr. Metz
3. Mr. Morateck
4. Miss Reilly
Following are some of the reasons why I would recommend Mr. White:
1. He has the administrative training and background to handle the job.
2. In his position at the middle school he has not had the benefit of co-curricular contracts such as is available to the high school people.

*996 3. It would be difficult to accuse him of showing preference to one of the high schools because he is not attached to a specific high school program, although he will be housed at Eisenhower High School next year.
4. He seems to have a good acquaintance with the music stores in the area.
5. I think he is honest and loyal.
6. His strength is the instrumental program which is the major portion of this responsibility.
7. There have been a number of instances in the past where he has had disappointments in being selected and I think this is an opportunity to place him in a position of succeeding.
8. Mr. White has served the district longer than any of the others.
9. I believe he can get along with the music people and I know that I can relate to him.
(Plaintiff's Exhibit 9)
By letter of June 6, 1972, plaintiff was informed by the superintendent of schools that he would recommend to the Board of Education that Bruce White be appointed the district coordinator of music. (Plaintiff's Exhibit 5)
The recommendation to appoint White was forwarded to the Board of Education in a memorandum dated June 12, 1972 (Defendant's Exhibit 9) The Board approved White's co-curricular contract without discussion.
In her letter dated August 15, 1972, plaintiff inquired of the superintendent as to the criteria used in making the selection for the job. (Plaintiff's Exhibit 6) He replied on August 18, 1972 with a handwritten note on the bottom of her letter, stating:
We were blessed with four well qualified applicants  you were one of them  for a single position. We choose one of the current practioners. (Plaintiff's Exhibit 6)
On November 8, 1973, plaintiff filed a complaint with the Wisconsin Department of Industry, Labor & Human Relations (DILHR) alleging that she was denied the job because of her sex. (Defendant's Exhibit 3) The Equal Employment Opportunity Commission issued plaintiff a right to sue letter on March 10, 1975. (Plaintiff's Exhibit 7)
In a non-class action complaint under Title VII alleging disparate and discriminatory treatment in employment, the complainant has the initial burden of establishing a prima facie case of discrimination. Plaintiff can make out a prima facie claim by showing:
(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668.
These standards also apply to sex discrimination cases under Title VII.
As the Court stated in Furnco Construction Corp. v. Waters, ___ U.S. ___, ___, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978, citing International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)):
The central focus of the inquiry . . is always whether the employer is treating `some people less favorably than others because of their race, color, religion, sex, or national origin.'
The court in Furnco Construction then explained that a prima facie showing of discrimination is not the equivalent of a factual finding of discrimination. Rather, the court stated:
[I]t is simply proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not those actions were bottomed on impermissible considerations. Id. at ___, 98 S.Ct. at 2951.
*997 Once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. McDonnell Douglas Corp. v. Green, supra 411 U.S. at 802, 93 S.Ct. 1817. The burden which shifts to the employer is merely that of proving that he based his employment decision on a legitimate consideration and not an illegitimate one such as sex or race. Furnco Construction v. Waters, supra; McDonnell Douglas Corp. v. Green, supra.
If the employer meets this burden, the plaintiff must then be given an opportunity to introduce evidence that the proffered justification is merely a pretext for discrimination. Id.
In this case, the only listed job qualification was that the district school music coordinator be a fully certified teacher of public school music. The plaintiff presented evidence showing that she met this qualification. The other applicants were also certified music teachers. Plaintiff was the only applicant who had a doctorate degree. One of the male applicants who was ranked ahead of the plaintiff by the deputy superintendent only had a bachelor's degree at the time of the recommendations.
Fourteen general duties and responsibilities were also listed for the position. Plaintiff had experience in all but one of these areas. Testimony at trial showed that plaintiff was certified as both a vocal and instrumental teacher and had worked as a supervisor of music. She also had taught music on the college level, had served as dean of women at Parsons College and had served as a curriculum consultant to a publishing company.
Plaintiff had taught in the New Berlin school system in 1964 and had returned to that school district as a guidance counselor at the Glen Park Middle School. Plaintiff was not teaching music at the time she applied for the district music coordinator's position.
To bolster her position, plaintiff also submitted statistical evidence which showed that from approximately 1965 to 1976, no woman served as principal or vice principal in the New Berlin School System. In 1976, one woman was appointed vice principal. During this time, approximately 60 percent of the employees in the New Berlin school system were female.
Although the position of principal and vice principal are not identical to the district music coordinator's position, they all involved some administrative and supervisory responsibilities. The Court, therefore, found that this evidence was relevant to the issues raised in this case.
In light of the evidence presented, the Court finds that plaintiff clearly established that she was qualified for the job.
Defendants argue that plaintiff must not only establish that she was treated differently because of her sex but that such different treatment was based on discriminatory motive or intent.
In Teamsters v. United States, supra 431 U.S. at 335 n. 15, 97 S.Ct. at 1854, the court stated that in cases alleging disparate treatment, "proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." Some courts now require plaintiff to prove the existence of discriminatory motive in a Title VII case.
But, in United States v. Chicago, 573 F.2d 416 (7th Cir. 1978), the Seventh Circuit Court of Appeals relied on Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) and expressly rejected the contention that discriminatory purpose or intent be demonstrated in a Title VII case. In Washington v. Davis, the Court stated:
Under Title VII, Congress provided that when hiring and promotion practices disqualifying substantially disproportionate numbers of blacks are challenged, discriminatory purpose need not be proved. Id. at 246-47, 96 S.Ct. at 2051.
Therefore, this Court finds that plaintiff need not prove discriminatory intent in a Title VII case.
*998 Although in this case, the fourth criteria set forth in McDonnell Douglas is not present, the Supreme Court indicated that the prima facie proof required will vary with differing factual situations. McDonnell Douglas Corp. v. Green, supra 411 U.S. at 802 n. 13, 93 S.Ct. 1817.
Plaintiff here has shown that she is a woman who was qualified for the position of district coordinator of music and that she was rejected for the job. Based upon the evidence presented at trial, the Court concludes that plaintiff has established a prima facie case of sexual discrimination.
The defendant employer then has an opportunity to rebut plaintiff's prima facie case and "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. at 802-3, 93 S.Ct. at 1824.
Defendants argue that the decision to appoint White to the position was based upon the deputy superintendent's valid, nondiscriminatory judgment.
Nine specific reasons were given for selecting White over all the other candidates. The deputy superintendent considered White's experience in the district as one major factor in his selection, although he testified it was not the most important consideration. White had taught in the New Berlin school system for seventeen years prior to being appointed to the district music coordinator's position. At this time, plaintiff had been working in the school district for three years.
The faculty was not told that length of service was an important consideration in selecting the district music coordinator, according to the testimony of the superintendent of schools.
The deputy superintendent testified that there was no school board policy stating that tenure was an important factor in filling the job of district coordinator of music. He further stated at his deposition that a person from outside the New Berlin school system would have as equal an opportunity of obtaining the music coordinator's job as a person who was already employed by that school system.
Deputy Superintendent Olson testified at trial that he reviewed White's credentials prior to his interview. However, at the hearing before the Wisconsin Department of Industry, Labor and Human Relations, Olson testified that he did not look through White's records prior to selecting him for the job.
With respect to White's administrative training and background, the deputy superintendent testified at trial that he was "impressed" with the fact that White had had courses in school administration which would naturally relate to the job. Olson also testified that he did not recall whether White had ever held any administrative position. At the DILHR hearing Olson testified that he did not know of an administrative position White held prior to being appointed district music coordinator.
At the trial Olson testified that he knew White had not held any prior supervisory position. He also stated that he did not question White as to his experience in teaching string instruments. At the DILHR hearing, Olson testified that one of the responsibilities of a district coordinator of music was the supervision and administration of the teaching of string instruments.
At the trial Olson stated that, at the time he recommended White for the job, he did not know whether White had any experience in teaching general classroom music or vocal music or in teaching on the K-6 level.
Staples, the Superintendent of Schools, testified that he knew White did not have any administrative or supervisory experience when he selected him for the position. He merely "rubber stamped" Olson's recommendation and did not conduct any independent investigation.
Both the superintendent and deputy superintendent were aware of plaintiff's administrative background and experience.
The second reason given for recommending White was that he has not had the benefit of co-curricular contracts. However, Olson admitted that plaintiff had not had a co-curricular contract and that White *999 did receive extra pay for serving as a band director.
With respect to many of the remaining stated reasons for White's selection, with the exception of the ninth stated reason, the deputy superintendent's testimony established that the plaintiff also fulfilled these requirements. For example, Olson testified he had no reason to believe that plaintiff was not loyal and honest or did not have a familiarity with area music stores.
White's one major strength was his length of service in the district. Testimony showed though that there was no school board policy stating that tenure should be a relevant factor in filling the district music coordinator position.
The Court is thus faced with determining whether the defendant has given some legitimate, nondiscriminatory reason for plaintiff's rejection or whether the reasons given for hiring White instead of the plaintiff are merely pretextual.
Defendants argue that Olson was validly exercising his judgment in choosing White for the job. They contend that this is simply a case where several qualified applicants seek one position and the employer must make a choice.
Plaintiff argues that the defendants' decision was sexually discriminatory. The Court notes that plaintiff was ranked last of all four applicants for the position.
While the Court recognizes that an employer has the right to exercise his best judgment in hiring personnel, the decision must not be based upon impermissible grounds.
The Court further recognizes that length of service with a school system may be an important factor in assigning job positions. However, this reason does not serve as a valid defense when applied to the facts of this case.
First of all, the record clearly shows that neither the job qualifications nor the duties and responsibilities of the position cited length of service with the new Berlin school system as a consideration in filling the job. Secondly, the New Berlin school board had no such stated policy. Furthermore, the deputy superintendent testified that a person from outside the school system would have had an equal opportunity to be selected for this job.
The Court finds that a question exists concerning the extent to which the defendants were committed to a "length of service" policy in selecting applicants for the position of district music coordinator. An employer cannot discriminate against a person in contravention of the law and then, after the fact, provide some previously unknown and nondiscriminatory reason for the selection of another person.
The Court is thus unpersuaded by defendants' "length of service" rationale.
In light of the foregoing, this Court finds that plaintiff has established a factual case of discrimination under Title VII and that the defendants have failed to articulate a valid, nondiscriminatory reason for not selecting plaintiff for the job of district music coordinator.
Accordingly, it is the judgment of the Court that the defendants be enjoined from engaging in any further unlawful employment practices against this plaintiff, that the defendants be ordered to offer the plaintiff a position as district coordinator of music, and that the plaintiff be awarded compensatory damages in the amount of $3,920 for the school years 1972-1977, plus the amount paid the district music coordinator in the new Berlin School system for the 1977-78 school year.
With respect to plaintiff's attorney's fees, counsel for plaintiff is herewith directed to submit an itemized statement of his fees to the Court within ten (10) days of the date of this order.
After examination of this statement, the Court will make its award of attorney's fees in this action.
Counsel for plaintiff is ordered to prepare an appropriate form of judgment for the Court's signature, after submitting same to opposing counsel for approval as to form.
*1000 The foregoing constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.
SO ORDERED this 25th day of August, 1978, at Milwaukee, Wisconsin.